**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BRANCH BANKING AND TRUST COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 11-0168-KD-C** |
| | ) | |
| **IMAGINE CBQ, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

Summary judgment was granted in favor of plaintiff Branch Banking and Trust Company and against defendants Imagine CBQ, LLC; Imagine Enterprises, LLC; Frances W. Hopkins; Joseph Overton; S. Beck Weathers; Margaret O. Weathers; and Bonnie L. Rieman (doc. 66 ). The Court declined entry of final judgment pending resolution of the current pay-off balance and the reasonableness of the attorney's fees and costs.

The parties have now filed their respective submissions in that regard; therefore, the following submissions are pending before the Court:  BBT's notice of filing supplemental evidentiary material (doc. 67), the affidavit by Kirkland E. Reid, counsel for BBT, as to attorney's fees and exhibits (Doc. 68-1); defendants Imagine CBQ, LLC; Imagine Enterprises, LLC; Frances W. Hopkins; Joseph Overton; and Bonnie L. Rieman's motion to strike or objection to the attorney's fee petition (doc. 70)[1] and their response in opposition to BBT's proof of damages (doc. 71)[2]; and BBT's reply in support of damages (doc. 72).

---

[1]  Defendants' motion to strike (doc. 70) is **DENIED**.

[2]  Defendants' motion for a one-day extension (doc. 71) is **GRANTED**.

I. Attorney's fees

The promissory notes and guarantee agreements obligate the defendants to pay costs and a reasonable attorney's fee for collection.[3] A determination of the reasonableness of attorney's fee begins with the lodestar analysis:  Determination of a reasonable hourly rate multiplied by the hours reasonably expended. *See Norman v. Housing Authority of City of Montgomery*, 836 F. 2d 1292, 1303 (11th Cir. 1988).  The reasonable hourly rate is generally "the prevailing market rate in the legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895-896 n. 11 (1984).  The movant bears the burden of establishing the "reasonableness" of the attorney's fees by providing specific evidence supporting the hours and rates claimed. *American Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999).  Once the lodestar is calculated, the Court may adjust the lodestar upon consideration of the factors identified in *Van Schaack v. AmSouth Bank, N.A.*, 530 So. 2d 740, 749 (Ala. 1988).  Also, the Court may utilize its own "knowledge and expertise" to determine the reasonableness of requested attorney's fees. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).

Upon consideration of BBT's submissions, the defendants' response (docs. 67, 68, 70), and the relevant factors, the Court finds that the hours expended by the attorneys are reasonable under the circumstances. Reid's affidavit, supported by copies of the billing statements, show that counsel for BBT spent a total of 78.55 hours in collection of nine promissory notes and seven guarantee agreements from preparation of demand through obtaining summary judgment. The billing entries indicate that the work performed was reasonable and necessary for the

---

[3]  The choice of law provision in the promissory notes and guarantee agreements require the application of the law of Alabama. (doc. 66, p. 4-5).

2

collection of these promissory notes and guarantee agreements (doc. 68-2).

The Court further finds as reasonable the hourly rate of $270.00 and $290.00 for Richard Wright, counsel with thirty years experiences the hourly rate of $200.00 and $217.50 for Kirkland Reid, counsel with fourteen years experience; the hourly rate of $210.00 for Kenneth Steely, special counsel practicing for eight years; and the hourly rate of $170.00 for Edward Miller, an associate attorney practicing for five years. *Dunagan v. ABBC, Inc.*, 2012 WL 1014756, 1 (S.D. Ala. March 22, 2012) (awarding $300.00 for an attorney with thirty-one years experience and extensive practice in federal court); *Vision Bank v. Anderson,* 2011 WL 2142786, 2-3 (S.D. Ala. May 31, 2011) (approving $250.00 for an attorney with fifteen years experience); *Mitchell Co., Inc. v. Campus*, 2009 WL 2567889, 1 (S.D.Ala., Aug. 18, 2009) (awarding $200.00 as a reasonable hourly rate for a senior associate with eight years experience); *Wachovia Bank v. Motes Const. & Development, Inc.,* 2010 WL 728587, 4 (S.D.Ala. Feb. 24, 2010) (awarding $175.00 for a fifth-year associate).  However, the Court does not find reasonable the hourly rate of $200.00 for Ronald Bruckmann, a two year associate from counsel's Miami, Florida office.  A reasonable hourly rate for a two year associate practicing in this District is $150.00.  *Vision Bank v. Anderson*, 2011 WL 2142786, *3 n. 4 (S.D. Ala. May 31, 2011) (awarding an hourly rate of $150.00 for an attorney with indeterminate years of experience and noting that $150.00 was a reasonable hourly rate for an attorney with a few years experience) (citing *Adams v. Austal, U.S.A., L.L.C.*, 2010 WL 2496396, at *6  (S.D. Ala. June 16, 2010)).

"The Supreme Court elected the lodestar approach because it produces a more objective estimate and ought to be a better assurance of more even results." *Norman*, 836 F.2d at 1299.  In *Norman*, the Eleventh Circuit explained that the Supreme Court "has declared that the lodestar as calculated in [*Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983)], presumptively

includes all of the twelve [Johnson] factors . . . except on rare occasions the factor of results

obtained and, perhaps, enhancement for contingency." *Norman*, 836 F. 2d at 1299 citing

*Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 106 S.Ct. 3088, 3098-3100

(1986).  Multiplying the reasonable hourly rate by the reasonable hours expended, yields the

following lodestar amounts:

> Richard Wright
>
> | | |
> |---|---|
> | 9.25[4] hours at $270.00 per hour in 2011 | $2,497.50 |
> | 3.20 hours at $290.00 per hour in 2012 | $928.00 |
>
> Kirkland Reid
>
> | | |
> |---|---|
> | 26.6 hours at $200.00 per hour in 2011 | $5,320.00 |
> | 16.3 hours at $217.50 per hour in 2012 | $3,545.25 |
>
> Kenneth Steely
>
> | | |
> |---|---|
> | 3.2 hours at $210.00 per hour | $ 672.00 |
>
> Edward Miller
>
> | | |
> |---|---|
> | 10.5 hours at $170.00 per hour | $1,785.00 |
>
> Ronald Bruckmann
>
> | | |
> |---|---|
> | 9.5 hours at $150.00 per hour | $1,425.00 |
>
> | | |
> |---|---|
> | Total attorneys' fee award | $16,172.75 |

The lodestar figure may be adjusted upon consideration of various factors including: (1)

the nature and value of the subject matter of the employment; (2) the learning, skill, and labor

requisite to its proper discharge; (3) the time consumed; (4) the professional experience and

reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success

achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the

---

[4]  The Court calculated 9.25 hours instead of 9.05 hours.

nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. *Van Schaack v. AmSouth Bank, N.A.*, 530 So.2d 740, 749 (Ala. 1988).  However, this is not an exhaustive list of specific criteria which must all be met. *Beal Bank, SSB v. Schilleci*, 896 So.2d 395, 403 (Ala. 2004).

Upon consideration of the relevant factors, the Court finds that adjustments to the lodestar are not appropriate. Specifically, the following factors: the nature and value of the subject matter; the learning skill and labor required; the time consumed; the attorneys' respective experience; and the customary fee in this market for attorneys of similar experience; were applied in the Court's calculation of a reasonable hourly rate and reasonable time expended. Additionally, the amount of time expended and the number of attorneys and paralegals involved indicates that work on this case did not preclude other employment, was charged by an hourly rate for an established client, and was not subject to time limitations such that an adjustment would be appropriate. Accordingly, $16,172.75 is a reasonable attorneys' fee.  Of these fees, $10,442.25 has been expended to collect the loans and guarantees as to Imagine CBQ, LLC, (doc. 68-3), $5,528.00 has been expended to collect the loans and guarantees as to Imagine Enterprises, LLC (doc. 68-2), and $202.50 for the Hopkins' loans (doc. 68-2, p. 1-5).[5]

II. Paralegal fees

As to reasonable paralegal fees, only time spent performing work traditionally performed by attorneys will be compensated. *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982). This Court has explained that "purely clerical or secretarial tasks should not be billed at a

---

[5] In reaching this division, the Court relied upon BBT's captions on its invoices.

paralegal rate regardless of who performs them" and that "time sheet includes entries for such things as copying documents, updating pleading and correspondence binders, applying Bates numbers to documents, mailing and telefaxing correspondence, obtaining driving directions, and even researching bed and breakfasts" were secretarial functions. *Allen v. McClain EZ Pack of Alabama, Inc.*, 2005 WL 1926636, *3  (S.D. Ala. 2005) (quoting *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463 (1989)).  *See also Williams v. R.W. Cannon, Inc.,* 657 F. Supp. 2d 1302  (S.D. Fla., 2009) (disallowing time entries reflecting internal emails between paralegal and supervising attorney and correspondence regarding coordination of scheduling with opposing counsel);  *In re Carter*, 326 B.R. 892, 894 (Bankr. S.D. Fla. 2005) (finding non-compensable the paralegal time spent in "the preparation of correspondence and notices to the debtors and third parties and the preparation for typing of other court papers.").

In regard to a reasonable hourly rate, this district has customarily awarded $75.00 per hour.  BBT has not presented any reason to deviate from this custom. Therefore, the Court finds that $75.00 is a reasonable hourly rate for paralegals in this district performing work traditionally performed by an attorney. *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC,*  2011 WL 1883009, 6 (S.D.Ala., May 17, 2011);  *Wells Fargo Bank, N.A. v. Williamson*, 2011 WL 382799, 5 (S.D. Ala., 2011).

BBT seeks a fee for 13.35 hours of work performed by Diane Tarpey and 18 hours of work performed by Sue Foster (doc. 68-1, p. 3).[6]  However, review of their time entries shows that some of the work performed was clerical and therefore, not compensable.  The request for fees as to those time entries is disallowed.[7]  Also, some time entries document mixed clerical and

---

[6] The Court reviewed the time entries for Foster and found a total of 22.7 hours.

[7] For example, Foster documented time spent reviewing and updating the firm's files, (Continued)

legal work,[8] such that the Court cannot ascertain how much time was spent on which task.

Therefore, for all mixed time entries, the Court will allow a fee for half of the time requested.

For the time entries documenting legal work, the Court will allow a fee for all time requested.

Thus, the Court allows the following paralegal time:

| | |
|---|---|
| February 3, 2011- Tarpey, Imagine Enterprises, LLC (doc. 68-2, p. 1) | .825 |
| February 15,2011 - Tarpey,  Imagine Enterprises, LLC (doc. 68-2, p. 1) | .125 |
| February 16, 2011- Tarpey , Imagine Enterprises, LLC (doc. 68-2, p. 6) | .145 |
| June 30, 2011- Foster,  Imagine Enterprises, LLC (doc. 68-2, p. 16) | 1.20 |
| February 10, 2012 - Foster,  Imagine Enterprises, LLC (doc. 68-2, p. 51) | .10 |
| July 1, 2011 - Foster,  Imagine CBQ, LLC (doc. 68-3, p. 21) | .25 |
| March 17, 2011 - Tarpey, Imagine CBQ, LLC (doc. 68-3, p. 6) | .20 |
| March 24, 2011 - Tarpey, Imagine CBQ, LLC (doc. 68-3, p. 6) | .50 |
| April 5, 2011- Tarpey, Imagine CBQ, LLC (doc. 68-3, p. 11) | .50 |
| May 17, 2011 - Tarpey, Imagine CBQ, LLC (doc. 68-3, p. 16) | <u>.25</u> |
| Total | 4.095 |

Multiplying the total hours allowed 4.095, times $75.00 per hour, yields $307.12 as a

reasonable fee for the time expended by the paralegal. As to Imagine CBQ, LLC, 1.70 hours

were expended by the paralegals at a rate of $75.00 per hour for a total of $127.50.  As to

_____

accessing PACER to update the files or obtain copies of documents, reviewing orders to schedule deadlines, conferencing with her supervising attorney, and obtaining service on defendants.

   [8] For example, the time entry of 1.65 hours on February 3, 2011, shows that Tarpey searched for addresses - a clerical function - and prepared a demand on three notes - a legal function.  Her time entries totaling 1.40 hours on March 17, 2011, show that she reviewed the file for addresses and prepared a cover sheet and summons - a clerical function - and revised and finalized the complaint - a legal function.

Imagine Enterprises, LLC, 2.395 hours were expended by the paralegals at a rate of $75.00 per hour for a total of $179.62.

III.  Costs

BBT seeks costs in the amount of $1,810.22.  The time sheets submitted document costs, including the $350.00 filing fee, in the amount of $1,666.63.[9]  The promissory notes and guarantee agreements provide that the borrower shall pay all costs of the lender, without qualification as to the reasonableness of the costs (*see* doc. 1-2, p. 1, doc. 1-1, p. 1).  Therefore, the Court finds that the documented costs in the amount of $1,666.63 are due to BBT.  As to Imagine CBQ, LLC, costs were incurred in the amount of $1,480.87, and as to Imagine Enterprises, LLC, costs were incurred in the amount of $185.76.  No costs were identified on the time sheet for the Hopkins' loans.

IV. Allocation among defendants

In regard to the loan to Imagine CBQ, LLC, and the guarantees by defendants Hopkins, Overton, S. Beck Weathers, and Margaret O. Weathers, the time sheets support a judgment in the amount of $10,442.25 as a reasonable attorneys' fee, $127.50 as a reasonable paralegal fee, for a judgment of $10,569.75 and costs of $1,480.87, for a total of $12,050.62.

In regard to the loans to Imagine Enterprises, LLC, and the guarantees by defendants Hopkins, Overton and Rieman, the time sheets support a judgment in the amount of $5,528.00 as a reasonable attorneys' fee, $179.62[10] as a reasonable paralegal fee, for a judgment of $5,707.62, and costs of $185.76, for a total of $5,893.38.

---

[9]  The Court did not include the overtime pay for two paralegals (doc. 68-3, p 7, $7.15; doc. 68-3, p. 47, $12.69).

[10]  A total of 2.395 hours were expended by the paralegals at a rate of $75.00 per hour for a total of $179.62.

Only one time sheet was submitted as to the Hopkins' loans.  (Doc.  68-3, p. 1).  On that time sheet, only .60 hours of work performed by Richard Wright is compensable.  In 2011, Wright billed BBT a rate of $270.00 per hour time. Therefore, a reasonable attorneys' fee is $162.00.  The paralegal work documented was clerical and non-compensable and no costs were billed. The final judgment as to the Hopkins' loans shall reflect a reasonable attorneys' fee in the amount of $162.00.

V. <u>Amounts owed on the promissory notes</u>

A. <u>The Imagine CBQ, LLC promissory note and guarantees</u>

As to the Imagine CBQ, LLC promissory note, BBT's Asset Manager, Susan Bell, sets forth the following:

| 1) Principal | $650,000.00 |
|---|---|
| 2) Interest at the non-default rate through May 29, 2010 (Non-default per diem: $99.30555) | $20,456.94 |
| Interest at the default rate from May 30, 2010 through April 18, 2012 (Default per diem: $320.55 x 689 days) | <u>$220,857.53</u> |
| Subtotal through April 18, 2012 | $891,314.47 |

(doc. 67-1).

Hopkins responds that Bell's prior affidavit showed August 29, 2010 as the default date but her current affidavit shows May 30, 2010, and that there is no evidence that the date is correct (doc. 71).  Hopkins states that on January 10, 2011, she received a spreadsheet from a BBT employee and that "[i]t shows an interest rate as of that date of 4.5%, not the post-default interest claimed by" BBT (doc. 71, p. 3-8).[11]  BBT replies that the post-default rate of interest

---

[11]  Hopkins does not contest the post-default rate.  All of the promissory notes provide for (Continued)

began on May 30, 2010, ten days after the May 19, 2010 demand letter was sent (doc. 72-2, doc. 28-1 Exhibit C, demand letter).  The demand letter was mailed May 19, 2010.  Any conflict among Bell's prior and current affidavit and the spreadsheet is resolved.  There is sufficient evidence, the copy of the demand letter and Bell's affidavit, that default occurred May 29, 2010.

Therefore, as to the Imagine CBQ, LLC promissory note and guarantee, judgment is due to be entered against Imagine CBQ, LLC, Hopkins, Overton, S. Beck Weathers, and Margaret O. Weathers, in the amount of  $891,314.47, the total balance due as of April 18, 2012, plus interest accrued to the date of judgment in the amount of $13,783.65,[12] and attorneys fees and costs in the amount of $12,050.62, for a total judgment of $917,148.74.

B.  <u>The Imagine Enterprises, LLC promissory notes and guarantees and the five Hopkins' promissory notes</u>

Hopkins contests BBT's application of the 18% post-default interest rate to the three Imagine Enterprises, LLC, promissory notes and the five Hopkins' promissory notes.  Hopkins states that on January 10, 2011, she received a spreadsheet from a BBT employee and that "[i]t shows an interest rate as of that date of 4.5%, not the post-default interest claimed by" BBT (doc. 71, p. 3-8).  However, the demand letter which triggered application of the post-default rate was not mailed and the post-default interest rate did not begin to accrue until February 2011, <u>after</u> the January 10, 2011 spreadsheet was sent to Hopkins (doc. 67-1, Bell Affidavit, p. 2-4).

Also, Hopkins contests on basis that "[t]here is no summary judgment evidence regarding the various interest rates charged for calculation of the interest due, and no evidence regarding

a post-default rate of 18% (doc. 65).

[12] Forty-three days have passed since April 18, 2012.  Multiplying forty-three days times the per diem of $320.55 yields $13,783.65.

the substituted Index." (doc. 71, p. 4, see also p. 5-8).  Hopkins points out that the promissory

notes provide for variable interest rates which are "equal to the following index: Colonial Bank

Base" and "[i]f that Index ceases to exist, Lender may substitute a similar Index which will

become the Index." (doc. 71, p. 4).  BBT responds that in the order on summary judgment, the

Court determined that Bell's affidavit was sufficient evidence of the debt (doc. 72).  BBT is

correct.  The Court found that Bell's affidavit was sufficient evidence and instructed BBT to

supplement the record with supporting evidence to establish the specific amount of damages to

which it is entitled (doc. 66, p. 8, 11).  BBT has now done so by way of Bell's current affidavit

showing the balance due as of April 18, 2012 (doc. 67-1, *cf.* doc. 28-1, prior affidavit). Hopkins'

speculation that Bell's calculations may be incorrect because the promissory notes are subject to

a variable interest rate is not sufficient to call into question Bell's calculations.

As to the three Imagine Enterprises, LLC promissory notes and Hopkins' notes 2, 3 and

5, Hopkins asserts that there is no evidence that February 14, 2011[13] was the default date and the

proper date from which to calculate post-default interest (doc. 71, p. 3-8).  In support, she

provides bank statements dated April 18, 2012 and April 13, 2012, which show a different past

due date and an interest rate of 4.5% (and not the post-default rate) (doc. 71, p. 3-8,  Exhibits B-

D).  BBT replies that the default rate of interest began on either February 14, 2011 or February

15, 2011, ten days after the demand letters was sent. (doc. 72,  doc. 28-1, Exhibit F-H).  Hopkins

provides no legal argument as to how receiving the bank statements trumps the effect of the

demand letters and prevents the interest from accruing at the post-default rate.  Thus, there is

sufficient evidence, the copies of the demand letters and Bell's affidavit, that default occurred

---

[13]  The default rate began on February 14, 2011 as to the Imagine Enterprises, LLC's
promissory notes and February 15, 2011 as to the Hopkins' promissory notes (doc. 67-1).

February 14, 2011 or February 15, 2011.

Hopkins also asserts that promissory note 4 was not in default and that the post-default rate should not accrue as to this note.  Hopkins also argues that the principal balance should be $27,900.39, less a payment of $1,218.96 to be applied to principal ($106.04 was to be applied to interest) instead of $34,794.83 as shown in Bell's affidavit.  Hopkins also asserts that the daily accrual rate is $3.4875 instead of $5.1506 as shown in Bell's affidavit.  In support, Hopkins attached a copy of the statement received from BBT on April 11, 2012 which shows a principal balance as of April 11, 2012 in the amount of $27,900.39 and that the last payment was credited on March 15, 2012 (doc. 71, p. 14).  The discrepancy in the principal balance appears to be the result of the higher post-default interest rate accruing in February 2011, which lowered the amount of the monthly payment which was applied toward the principal balance. Thus, Bell's affidavit provides sufficient evidence as to the balance due on this promissory note.

As to Imagine Enterprises, LLC promissory note 1, Bell sets forth the following:

| | |
|---|---|
| 1) Principal | $255,617.79 |
| 2) Interest at the non-default rate through February 13, 2011 (Non-default per diem: $31.9522) | $8,307.58 |
| Interest at the default rate from February 14, 2011 through April 18, 2012 (Default per diem: $126.06 x 430 days) | $54,204.98 |
| Subtotal through April 18, 2012 | $318,130.35 |

(Doc.  67-1).

As to Imagine Enterprises, LLC's promissory note 2, Bell set forth the following:

| | |
|---|---|
| 1) Principal | $310,479.96 |
| 2) Interest at the non-default rate through February 13, 2011 (Non-default per diem: $38.8099) | $10,090.60 |

12

| | |
|---|---|
| Interest at the default rate from February 14, 2011 through April 18, 2012 (Default per diem: $153.11 x 430 days) | $65,838.76 |
| Subtotal through April 18, 2012 | $386,409.32 |

(Doc. 67-1).

As to Imagine Enterprises, LLC promissory note 3, Bell set forth the following:

Imagine Enterprises, LLC Note 3

| | |
|---|---|
| 1) Principal | $263,921.15 |
| 2) Interest at the non-default rate through February 13, 2011 (Non-default per diem: $32.9901) | $8,544.44 |
| Interest at the default rate from February 14, 2011 through April 18, 2012 (Default per diem: $130.15 x 430 days) | $55,965.75 |
| Subtotal through April 18, 2012 | $328,431.34 |

(Doc. 67-1).

Therefore, as to the Imagine Enterprises, LLC, promissory notes and guarantees judgment is due to be entered against Imagine Enterprises, LLC, Hopkins, Overton, and Rieman, in the total amount of $1,032,971.01 for the balances due as of April 18, 2012, plus interest accrued to the date of judgment in the amount of $17,600.76, and attorneys' fees and costs in the amount of $5,893.38, for a total judgment of $1,056,465.15.

As to Hopkins' promissory note 1, Bell set forth the following:

| | |
|---|---|
| 1) Principal | $29,471.00 |
| 2) Interest at the non-default rate through February 14, 2011 (Non-default per diem: $3.4464) | $861.62 |
| Interest at the default rate from February 15 2011 through April 18, 2012 (Default per diem: $14.53 x 429 days) | $6,234.93 |

Subtotal through April 18, 2012                $36,567.55

(Doc. 67-1).

As to Hopkins' promissory note 2, Bell set forth the following:

1) Principal                $148,936.72

2) Interest at the non-default rate through February 14, 2011    $4,635.66
      (Non-default per diem: $18.6170)

Interest at the default rate from February 15 2011 through   <u>$31,509.30</u>
April 18, 2012
(Default per diem: $73.45 x 429 days)

Subtotal through April 18, 2012                $185,081.68

(Doc. 67-1).

As to Hopkins' promissory note 3, Bell set forth the following:

1) Principal                $156,146.88

2) Interest at the non-default rate through February 14, 2011    $4,879.60
      (Non-default per diem: $19.5183)

Interest at the default rate from February 15 2011 through   <u>$33,034.69</u>
April 18, 2012
(Default per diem: $77.00 x 429 days)

Subtotal through April 18, 2012                $194,061.17

(Doc. 67-1).

As to Hopkins' promissory note 4, Bell set forth the following:

1) Principal                $34,794.83

2) Interest at the non-default rate through February 14, 2011    $257.41
      (Non-default per diem: $5.1506)

Interest at the default rate from February 15 2011 through   <u>$7,361.25</u>
April 18, 2012
(Default per diem: $17.1591 x 429 days)

4) Less interest paid              <u>($1,160.29)</u>

Subtotal through April 18, 2012                          $41,253.20

(Doc. 67-1).

As to Hopkins' promissory note 5, Bell set forth the following:

1) Principal                                            $91,450.00

2) Interest at the non-default rate through February 14, 2011        $2,736.38
    (Non-default per diem: $11.6250)

Interest at the default rate from February 15 2011 through        $19,347.31
April 18, 2012
(Default per diem: $45.0986 x 429 days)

Subtotal through April 18, 2012                          $113,533.69

(Doc. 67-1).

Therefore, as to the Hopkins promissory notes, judgment is due to be entered against

Hopkins in the total amount of $570,497.29  for the balances due as of April 18, 2012, plus

interest accrued to the date of judgment in the amount of $9,770.79, and attorneys' fees in the

amount of $202.50, for a total judgment of $580,470.58.

Judgment shall be entered accordingly by separate order.

DONE this the 1st day of June, 2012.


  s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE